## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ANDREA T. ANNESE          )
                                     )
          Plaintiff,         )
v.                               )     Case No: CIV-17-655-C
                                     )
U.S. XPRESS, INC and     )
GLENN ANDERS,          )
                                   )
          Defendants.      )

## PLAINTIFF'S MOTION FOR LEAVE OF COURT TO FILE AN AMENDED COMPLAINT and BRIEF IN SUPPORT THEREOF

COMES NOW the Plaintiff and respectfully requests leave of Court to file an amended Complaint to assert additional claims against U.S. XPRESS, INC., in light of the recent opinion of the Supreme Court of Oklahoma in *Fox v. Mize*, 2018 OK 75, --- P.3d ---, *as corrected* (Oct. 2, 2018). [1] Specifically, Plaintiff seeks to amend the Complaint to allege the Defendant, U.S. Xpress, Inc. may be held liable for negligent hiring, training, retention and supervision of its employee, Defendant truck driver, Glenn Anders. [As required by this Court's Local Rule LCvR15.1, a copy of Plaintiff's proposed Amended Complaint is attached hereto as *Exhibit "1"*.]

Prior to filing this Motion, Plaintiff's counsel discussed it with counsel for the Defendants who have stated Defendants object to Plaintiff's Motion, thus it is submitted for the Court's determination.

---

[1] The *Fox* opinion became final and legally binding as of October 17, 2018 when the Supreme Court issued the mandate in that case.

# I. INTRODUCTION[2]

On or about March 9, 2016 at or near South Morgan Rd. and S.W. 8th Street in Oklahoma City, Oklahoma County, Oklahoma, Defendant truck driver, Glenn Anders, negligently drove a tractor-trailer, striking the vehicle operated by Plaintiff, Andrea T. Annese. Both vehicles were southbound and were stopped side-by-side in the left turn lanes on Morgan Road at the SW 8th Street intersection. As the light turned green, both vehicles proceeded to make left hand turns, turning east on SW 8th Street. Defendant truck driver, Glenn Anders, entered into Plaintiff's lane with the tractor-trailer striking the passenger side of Plaintiff's vehicle. Defendant truck driver, Glenn Anders, then "fled the scene without providing any information." The investigating police officer found Defendant truck driver, Glenn Anders, caused the collision by making an improper left hand turn. The investigating police officer found **no improper action** on the part of the Plaintiff. Defendant, Anders, has testified he was driving in the area on the date and time of the alleged motor vehicle collision but does not recall being involved in a motor vehicle accident. (*Exhibit "2":* Deposition of Defendant Anders, Pg. 222-225) Additionally, the Corporate Representative for Defendant U.S. Xpress stated he determined the motor vehicle collision was preventable and that Defendant, Anders, was terminated following the investigation. (*Exhibit "3":* Deposition of David Tomshack, Pg. 152).

At the time of the collision, Defendant Anders, was a professional tractor-trailer driver, held a Class A driver's license and was an employee and/or agent of Defendant, U.S. Xpress, Inc. The tractor-trailer driven by Defendant truck driver, Glenn Anders, was owned, controlled, and/or maintained by his employer/master, Defendant, U.S. Xpress, Inc.

---

[2] The facts contained in this Introduction are taken from the Plaintiff's Response [Doc. #17] in opposition to the Motion for Judgment on the Pleadings on Plaintiff's Direct Negligence Claims filed by Defendant, U.S. XPRESS, INC. Plaintiff adopts by reference, pursuant to Fed. R. Civ. P. 10(c), the Response and exhibits filed therewith.

Plaintiff alleges, *inter alia*, Defendant, U.S. Xpress, Inc. is vicariously liable for the negligence of its employee, agent and/or statutory employee, Defendant truck driver, Glenn Anders, under the theory of *respondeat superior*. Plaintiff also alleges Defendant, U.S. Xpress, Inc., negligently entrusted Defendant Anders, with a commercial motor vehicle, and knew or should have known that Defendant Anders was incompetent and/or reckless driver. Due the wildly differing opinions on the matter and inconsistency of the court rulings, Plaintiff did not, at the time of filing the First Amended Complaint, advance a claim that Defendant, U.S. Xpress, Inc., could be liable for negligent hiring, training, retention and supervision of its employee, Defendant Anders.

Plaintiff alleged that as a direct and proximate result of the negligence of the Defendants, U.S. Xpress, Inc. and Glenn Anders, the Plaintiff, Andrea T. Annese, sustained bodily injuries; incurred medical expenses; suffered pain and suffering; and has incurred property damage all in an amount in excess of $75,000.00. Plaintiff also seeks punitive damages in an amount in excess of $75,000.00 for the acts reflecting reckless disregard for the rights and safety of others and the Plaintiff.

On November 14, 2017, Defendant, U.S. Xpress, Inc., filed its Motion [Doc. 14] for an order granting judgment on the pleadings on Plaintiffs direct negligence claims asserted against it for alleged "negligent entrustment" - or any other variance of a direct claim of negligence against it." [*See* Defendant's Motion, p. 1.] Defendant argued that since it had "admitted that Mr. Anders was its employee and that he was within the scope of employment at the time of the accident," then, under the "seminal case of *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289," "any direct claim of negligence against Defendant U.S. Xpress – whether bearing the moniker of 'negligent entrustment,' 'negligent hiring,' 'negligent training,' or the like - is legally moot and void, and must be dismissed." [*See* Defendant's Motion, pp. 2-3.]

3

Plaintiff response was filed on December 7, 2017 [Doc. 17], where in the Plaintiff argued, *inter alia*, Oklahoma law does not support Defendant's position for the following reasons:

> [1] Negligent hiring, retention, training, entrustment, and supervision claims are well-recognized, distinct and separate causes of action in Oklahoma against an employer, which is not based on an employee's duty to use reasonable care while acting on behalf of the employer; but rather is based on an employer's separate and independent duty to use reasonable care in hiring, retaining, and entrusting employees to act on its behalf.

> [2] Defendant's distorted expansion of *Jordan* has been refuted by the Oklahoma Supreme Court in other unreported cases.

> [3] *Jordan* does not repudiate the broad permission of Fed.R.Civ.P. 8 for Plaintiff to proceed to trial in this case, pre-judgment, on multiple separate tort theories.

> [4] *Jordan* is limited to cases where the employee commits an *intentional* tort.

[*See* Plaintiff's Response, pp. 2-3.]

On December 28, 2017, this Court issued a Memorandum Opinion and Order [Doc. 18], denying Defendant, U.S. Xpress, Inc.'s Motion, thereby permitting Plaintiff's negligent entrustment claim to proceed along with Plaintiff's respondeat superior claim.

According to this Court's Scheduling Order [Doc. 11], amendments to the pleadings were required to be filed by November 1, 2017. As noted above, however, the clarification of the law in *Fox v. Mize*, 2018 OK 75, was issued by the Oklahoma Supreme Court on October 2, 2018 and became final on October 15, 2018.

This motion was promptly filed after the *Fox* opinion became the new binding law on this issue. Plaintiff now seeks leave of Court to file an amended Complaint to specifically allege the Defendant, U.S. Xpress, Inc. may be liable for negligent hiring, training, retention and supervision of its employee, Defendant truck driver, Glenn Anders.

## II. ARGUMENTS AND AUTHORITIES

**Proposition 1:**      **Leave to Amend Pleadings Should Be Freely Given When Justice Requires**

Leave to amend pleadings should be freely given when justice requires.  Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962)("Rule 15(a) declares that leave to amend 'should be freely given when justice so requires'; this mandate is to be heeded."); *United States v. Hougham*, 364 U.S. 310, 316-7 (1960)("[T]he ordinary liberal rules governing the amendment of pleadings are applicable. The applicable rule is Rule 15 of the Federal Rules of Civil Procedure, which was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.").

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kansas Department of Social and Rehabilitation Services*, 181 F.3d 1180, 1186 (10th Cir. 1999). "Consistent with this rule, we have held that '[t]he purpose of [Rule 15(a)(2)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018)(*quoting Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, *supra*, 371 U.S. at 182. "[T]he court must be mindful of the spirit of the Federal Rules of Civil Procedure to encourage decisions on the merits rather than on mere technicalities." *CTI Servs. LLC v. Haremza*, No. 09-CV-144-GKF-TLW, 2011 WL 780489, at *1 (N.D. Okla. Feb. 25, 2011)(*citing DCD*

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

"In the absence of an apparent reason to refuse leave to amend-such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of an amendment, etc.- "the leave sought should, as the rules require, be 'freely given.'" *Triplett v. LeFlore County*, 712 F.2d 444, 446 (10th Cir. 1983)(*quoting Foman v. Davis*, *supra*).

"Amendments to pleadings should be allowed with liberality in the absence of circumstances such as 'undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, (or) futility of amendment.'" *Klipsch, Inc. v. WWR Technology, Inc.*, 127 F.3d 729, 732 (8th Cir. 1997). "[P]ublic policy strongly encourages courts to permit amendments" and "[t]he policy of allowing amendments is to be applied with extreme liberality." *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008) (citations and internal quotation marks omitted), *cert. denied*, 559 U.S. 1111 (2010). This rule of liberally allowing amendments to the pleadings has been followed "even before the adoption of the Rules of Civil Procedure." *Blair v. United States*, 147 F.2d 840, 843 (8th Cir. 1945); *Schulenberg v. Norton*, 49 F.2d 578, 579 (8th Cir. 1931). "The burden of proof of prejudice is on the party opposing the amendment." *Sanders v. Clemco Industries*, 823 F.2d 214, 217 (8th Cir. 1987); *Beeck v. Aquaslide 'N' Dive Corporation*, 562 F.2d 537, 541 (8th Cir. 1977).

There is no bad faith or dilatory motive in seeking to amend to add the claims to Plaintiff's Complaint. There has been no prior attempt, much less "repeated attempts," to cure any deficiencies in the Plaintiff's Complaint. There is no "futility" of the proposed amendment as the facts and circumstances of this case support the claims sought to be added, which are valid and recognized under the law and would clearly survive a motion to dismiss.

Defendants will suffer no prejudice by the amendment and the amended claims arise out

same facts and subject matter asserting in the original Complaint. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006)(quotation and citation omitted). "Most often, this occurs when amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* The Tenth Circuit has repeatedly held there is no prejudice to the Defendant where the amendment arises out of the factual assertions or subject matter asserted in the original Complaint. *See, e.g. Minter*, 451 F.3d at 1208 (finding no prejudice where new claim relied on the same factual underpinnings as a claim that had already been asserted); *Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims"); *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"); and *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751-52 (10th Cir. 1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues").

While the Scheduling Order guides the subsequent course of the case, "'total inflexibility is undesirable.'" *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997)(citations omitted). In other words, "rigid adherence to the scheduling order is not advisable." *Sil-Flo, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990), *citing Smith Contracting Corp. v. Trojan Constr. Corp.*, 192 F.2d 234, 236 (10th Cir. 1951). A failure to timely amend may be excused if due to oversight, inadvertence or excusable neglect. *Id.*

"The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim *after* the deadline to amend established in the scheduling order has

expired constitutes good cause to extend that deadline." *Pumpco, Inc. v. Schenker Int=l, Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001). As discussed above, the clarification and change to Oklahoma law only occurred within the last few weeks, thus there is good cause for Plaintiff to amend the Complaint outside the Court's Scheduling Order deadline.

**Proposition 2:**        **The Recent Opinion Issued by the Supreme Court of Oklahoma Clarifies Oklahoma Law and Restricts *Jordan v. Cates* to its Facts**

As this Court knows, Defendant, U.S. Xpress, Inc., like other Defendant employers, who have been sued for injuries caused by their employees have routinely filed motions to dismiss or for summary judgment arguing the case of *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289, limits the Plaintiff's causes of action and, indeed, selects the cause of action Plaintiff may pursue. The *Jordan* case involved a physical altercation between a store employee and customer in which the customer was battered and injured. The store stipulated the altercation occurred while its employee was acting in the course and scope of employment, and the *Jordan* Court held: "[w]hen an employer stipulates that an employee is acting within the scope of employment at the time of the altercation and punitive damages are available against it under a theory of *respondeat superior*, an additional claim for negligent hiring exposes the employer to no additional liability," "[t]hereby making any other theory for imposing liability on the employer unnecessary and superfluous." *Id.*, ¶¶ 16, 21, 935 P.2d at 293-94.

Defendant employers have asserted that under *Jordan*, in ***all*** negligence cases once the Defendant employer admits/stipulates that the tortfeasor employee was an employee within the course and scope of his/her employment at the time of the Plaintiff's injury, then Plaintiff could only pursue a vicarious liability (*respondeat superior*) claim against the employer. The Defendant employers argued other claims for negligent hiring, training, retention and supervision and for negligent entrustment, could not be pursue under *Jordan*.

8

Many Oklahoma state and federal trial courts accepted an impermissibly expansive interpretation of the limited holding in *Jordan*, to permit employers to effectively insulate themselves from negligent hiring, retention, training, supervision and entrustment claims in Oklahoma courts by simply acknowledging that a negligent employee was acting within the course and scope of his employment at the time the Plaintiff was injured. Thus, according to the misinterpretation, no matter how unqualified, unfit, poorly-trained, or poorly-supervised an employee was at the time of a Plaintiff's injury and regardless of how egregious an employer's conduct was in hiring and entrusting the employee, the Defendant employer was given a free pass on those issues.

As noted above, on October 2, 2018, the Supreme Court of Oklahoma issued the opinion in *Fox v. Mize*, 2018 OK 75, --- P.3d ---, *as corrected* (Oct. 2, 2018). The *Fox* opinion specifically holds that a Plaintiff may pursue a negligent entrustment claim along with *respondeat superior* claims against the employer of an employee who injured a Plaintiff. More importantly for the purposes of this case, the *Fox* case holds *Jordan* case "***is limited to its facts***." 2018 OK 75, ¶ 14, n. 12 (*emphasis ours*). In other words, the Oklahoma Supreme Court has stated the *Jordan* case is limited to cases involving an intentional tort or battery committed by an employee. With the pronouncement in the *Fox* case:

> [1] Negligent hiring, retention, training, supervision and entrustment claims are well-recognized, distinct and separate causes of action in Oklahoma against an employer and may simultaneously pursued in a negligence action against the employer, whose employee has caused injury to the Plaintiff.

> [2] An unbridled expansion of the intentional tort/battery *Jordan* case was never intended by the Oklahoma Supreme Court to exclude claims for negligent hiring, training, retention and supervision of its employee in ***all*** tort cases.

> [3] The *Fox* case confirms the underlying facts of *Jordan* and the Court's careful and precise language used in *Jordan* demonstrates its holding is limited to cases

where the employee commits an *intentional* tort or battery, thus does not apply in a an ordinary negligence action.

In the *Fox* case, a personal representative of the estate of motorcyclist, who died during collision involving tractor-trailer, brought action against the driver of tractor-trailer for negligence and negligence *per se* and against driver's employer for negligent entrustment, negligent hiring, training, and retention; negligence; negligence *per se*; and  respondeat superior. The trial court granted the employer's partial motion to dismiss as to negligent-hiring claim, but denied motion as to negligent-entrustment claim. The employer filed petition for writ of certiorari arguing the negligent entrustment claim should not have been permitted to proceed. Certiorari was granted by the Oklahoma Supreme Court and the Court affirmed the district court's ruling:

> Finally, (the trucking company) argues that this Court's decision in *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289, requires dismissal of the negligent entrustment claim. In *Jordan*, a customer went into a convenience store, and an altercation ensued between the customer and an employee of the store. The customer sued the employee for battery and alleged that the convenience store was vicariously liable for the acts of its employee under the doctrine of respondeat superior. The customer also alleged the convenience store was negligent in hiring and retaining the employee because the store knew or should have known the employee had violent tendencies. The store stipulated the altercation occurred while its employee was acting in the course and scope of employment, and we said that "[w]hen an employer stipulates that an employee is acting within the scope of employment at the time of the altercation and punitive damages are available against it under a theory of respondeat superior, an additional claim for negligent hiring exposes the employer to no additional liability." *Id.*, ¶ 21, 935 P.2d at 294.

> The facts in *Jordan* are distinguishable from the case at bar because *Jordan* involved a battery claim against the employee and a negligent hiring claim against the employer. Because the Plaintiff in this case did not appeal the district court's dismissal of the negligent hiring claim, we need not determine whether a negligent hiring claim should be treated differently than a negligent entrustment claim.[12] Upon consideration, we conclude that an employer's liability for negligently entrusting a vehicle to an unfit employee is a separate and distinct theory of liability from that of an employer's liability under the respondeat superior doctrine. An employer's stipulation that an accident occurred during the

course and scope of employment does not, as a matter of law, bar a negligent entrustment claim.

*Fox v. Mize*, 2018 OK 75, ¶¶ 13-14. Footnote 12 to the *Fox* opinion states:

> We recognize the tension in our case law in this regard. As one federal district court has stated: "It is difficult to discern a persuasive basis for treating a claim for negligent entrustment differently from a claim for negligent hiring" because both "presumably rely on the employer's own acts or negligence." *Warner*, 5:16-cv-00305-HE (Feb. 10, 2017). However, the issue is not currently before us on appeal. ***We do take this opportunity, however, to expressly state that, for now, the holding in Jordan is limited to its facts.***

*Fox v. Mize*, 2018 OK 75, ¶ 14, n. 12 (*emphasis ours*).  One of the cases the *Fox* Court cited as example of a federal court allowing negligent hiring, training, and retention claims to proceed despite an employer's stipulation of course and scope, was *Ramiro v. J.B. Hunt Transport Services, Inc.*, Case No. CIV-04-1033-M, filed in the U.S. District Court for Western District of Oklahoma. In the April 8, 2005 Order in *Ramiro*, federal District Judge Vicki Miles-LaGrange explained:

> For all of the above-stated reasons, the Court finds the holding in *Jordan* is limited to cases involving intentional torts. Thus, the holding has no application in the case at bar, and in no way precludes Plaintiffs' negligent hiring, training, and retention claim.  As Defendants have not advanced any alternative grounds for this Court to question the viability of Plaintiffs' negligent hiring, training, and retention claim, in view of the fact that Oklahoma courts explicitly recognize such claims, *see, e.g., N.H.*, 998 P.2d at 600, as well as the propriety of pursuing similar claims simultaneously with respondeat superior claims, *Nat'l Trailer*, 375 P.2d at 929, and considering the facts of this particular case, which on their face indicate that such a claim could at least potentially result in a jury verdict in Plaintiffs' favor, the Court finds that Plaintiffs should be permitted to amend their Petition by adding a claim that Hunt negligently hired, trained, or retained (Defendant driver).

*Order,* pp. 6-7 [*Exhibit "4".*]. Judge Miles-LaGrange held the *Jordan* rule should, under the actual language of that case, be properly applied narrowly to intentional tort cases and not broadly, to all cases including negligence cases:

[T]he Court is persuaded that the narrower language of *Jordan*'s syllabus, in which the Oklahoma Supreme Court's holding is limited to cases involving physical altercations, accurately reflects the intent of that court. …

[T]he language and citations contained in the body of the *Jordan* opinion, which support the narrower holding set out in the syllabus. For example, the Oklahoma Supreme Court discussed the doctrine of respondeat superior in the context of an "employee's *intentional* tort," 935 P.2d at 292 (emphasis added), rather than with respect to torts generally. …

If the *Jordan* court intended to pronounce a new substantive rule with application in cases factually distinguishable from the case then under consideration, as Defendants maintain it did, one would reasonably expect that the court would do so explicitly. Clearly, it did not. …

If the Oklahoma Supreme Court intended to extend its *Jordan* holding to negligence cases, one would expect to find some recognition of, if not reliance upon, that extended holding in Oklahoma case law. Clearly, that has not happened.

*Id.*, pp. 5-6. Judge Miles-LaGrange's narrow interpretation of the *Jordan* opinion, in which she ruled that *Jordan* was limited it to intentional tort or assault and battery cases proved correct. *Jordan* simply was never intended to apply to negligence cases generally.

Additionally, a claim for negligent hiring, training, retention and supervision, should be allowed as it is supported by the evidence developed during the discovery process. Plaintiff's expert Vern Cunningham provided opinions in support of Plaintiff's claim for negligent hiring, training, retention and supervision. A summary of those opinions are as follows:

### Non-Compliant Hiring, 2014

"As a former transportation professional I recruited; hired; and terminated an estimated hundreds of drivers in 20+ years. I fully recognize the possibility of a discrepancy going unnoticed in the accumulation of documents required for a Driver Qualification file. Beginning with an incomplete and erroneous Application for Employment, the Departments in US Xpress, Inc. responsible for compliance with the required Department of Transportation documents as well as their internal hiring guidelines repeatedly fell short of what should have been the goal of compliance. US Xpress, Inc. should not have extended employment to Glenn M. Anders in April, 2014."

### Orientation and Safety Training

12

"The absence of documentation of the training provided on the safety topics included in the US Xpress, Inc. Drivers Handbook Table of Contents; the US Xpress Orientation Fast Track Schedule; and the 2015 Quarterly Safety Campaign render the intent of the training impotent. Without documentation that Mr. Anders (1) received the training; and (2) Mr. Anders comprehended the training received; there is simply no evidence such training existed. This opinion is further substantiated by the repeated safety failures on specific topics that US Xpress, Inc. claims to have provided to Mr. Anders, with no remedial training to correct the obvious lack of driving skills."

## Negligent Retention, 2015

"It is published in the US Xpress, Inc. Driver Hiring Guidelines that no driver will be hired if he or she had more than 3 preventable accidents in the last 36 months prior to application to US Xpress, Inc.  Mr. Anders was hired with knowledge of 2 preventable accidents and the missing information on what could have possibly been a 3rd. Within the first 3 months of his 2nd employment with US Xpress, Inc., Mr. Anders had no less than 3 preventable accidents. Yet, US Xpress, Inc. chose to keep Mr. Anders employed. Retaining Mr. Anders after such dismal safety performance demonstrates a blatant disregard for hiring and retaining a higher quality of driver. Competition is fierce in the trucking industry; however safety should not be compromised under the pressure of driver retention.

It is my opinion, based on my experience as a former transportation professional; Mr. Anders should have been terminated long before the 4th preventable accident that leads to this matter."

## Supervision

"As a former transportation professional, I find it alarming that a large carrier such as US Xpress, Inc. appears devoid of:

 A consistent written policy for determining the application of probation and progressive discipline for employees with repeated preventable accidents. Mr. Tomshack testified on Page 136 & 137 of his deposition of a preventable accident by Mr. Anders. Mr. Anders was not placed on probation because he was already on probation for another preventable accident. Common sense demands that probation has consequence. If an employee is already on probation and repeats the behavior that landed him on probation initially, you should terminate that employee. You don't look the other way and ignore the process.

And

A written retention policy that dovetails with a written policy for the application of probation and progressive discipline. Mr. Tomshack, on Page 130 of his deposition, testified of "unspoken rules" when determining whether to retain a driver or not. He states, "Review the driver's profile, make that determination. The driver's on probation, you know, you need to look and see what kind of accident happened after probation and make that determination. I mean, that's pretty much it. We've given the authority to each of my field staff who review the accidents and driver's profiles the authority to make that determination.""

Plaintiff's expert provides a full analysis in support of Plaintiff's claim for negligent hiring, training, retention and supervision, in his report. (*Exhibit 5*).

### III. CONCLUSION

The Supreme Court of Oklahoma has made it clear in *Fox v. Mize* that *Jordan v. Cates* does not prevent Plaintiff from simultaneously pursuing negligent hiring, training, retention and supervision and a negligent entrustment claim against the Defendant employer. Under the facts and circumstances of this case and the recent pronouncement in *Fox*, leave of Court should be granted to allow Plaintiff to file an amended Complaint and assert these additional claims.

WHEREFORE, premises considered, Plaintiff's pray this Honorable Court to grant Plaintiff leave of Court to file an amended Complaint to specifically allege the Defendant, U.S. Xpress, Inc. may be liable for negligent hiring, training, retention and supervision of its employee, Defendant truck driver, Glenn Anders.

Respectfully submitted,

 */s/ Monty L. Cain*
MONTY L. CAIN, OBA #15891
Cain Law Office
10415 Greenbriar Pl., Suite A
P. O. Box 892098
Oklahoma City, OK 73189
Phone: (405) 759-7400   Fax: (405) 759-7424
Email: monty@cainlaw-okc.com
        anthony@cainlaw-okc.com
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14 day of November, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Peter L. Wheeler, OBA #12929
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, LLP
P.O. Box 26350
Oklahoma City, Oklahoma 73126
Telephone: 405-235-1611
Facsimile : 405-235-2904
pwheeler@piercecouch.com
Attorney for Defendants

                              */s/ Monty L. Cain*
                              MONTY L. CAIN, OBA #15891