# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREA T. ANNESE, | ) |
|       Plaintiff, | ) |
| vs. | ) No. CIV-17-655-C |
| U.S. XPRESS, INC. and GLENN ANDERS, | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court are Plaintiff's Motions (1) to Exclude the Testimony of Janine Smedley (Dkt. No. 139) and (2) to Limit the Testimony and Opinions of Dr. Stephen B. Conner (Dkt. No. 140). Xpress has filed its responses (Dkt. Nos. 146, 147), and Plaintiff has filed her replies (Dkt. Nos. 153, 154.) The motions are now at issue.

## I. Background

This case arises from events that occurred on March 9, 2016. On that day, Plaintiff Andrea T. Annese alleges Defendant Glenn Anders negligently drove a tractor-trailer owned by Defendant U.S. Xpress ("Xpress") and caused an accident which resulted in damages to her. (See generally Second Amended Compl., Dkt. No. 109.) The parties have been engaged in discovery, and the dispute here is whether, and to what extent, to permit two of Xpress's experts—Janine Smedley and Dr. Stephen B. Conner—to testify at trial. Regarding Smedley, Plaintiff contends that her methods are unreliable, mostly because, in Plaintiff's view, she failed to provide an adequate definition of the term "injury." And regarding Dr. Conner, Plaintiff asserts that he is not qualified to render a reliable opinion

on spinal surgery because he has not performed one in approximately 15-20 years. Xpress maintains that both proffered experts should be permitted to testify.

## II. Standard

Federal Rule of Evidence 702 imposes upon the trial judge an important "gate-keeping" function regarding the admissibility of expert opinions. See generally Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). When performing this function, courts must undertake a two-step analysis: First, courts must determine whether the purported expert is qualified—particularly considering the expert's "'knowledge, skill, experience, training, or education.'" See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001 (quoting Fed. R. Evid. 702). Second, "if the proposed expert is determined to be sufficiently qualified, the court must determine whether his opinions are 'reliable' in the sense required by Daubert and Kumho." In re Williams Sec. Litig., 496 F. Supp. 2d 1195, 1231-1232 (N.D. Okla. 2007) (citing Ralston, 275 F.3d 965 at 969).

  a. Qualifications

It is well-settled that a proposed expert "should not be required to satisfy an overly narrow test of his own qualifications." Gardner v. General Motors Corp., 507 F.2d 525, 528 (10th Cir.1974). Indeed, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994). Accordingly, an "expert's qualifications must be both (i) adequate in a general, qualitative sense (*i.e.*, 'knowledge, skill, experience, training or

education' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert." Williams, 496 F.Supp.2d at 1232.

  b. Reliability

Rule 702 permits an expert with the necessary qualifications in the relevant field to present expert testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. See Fed. R. Evid. 702; see also Goebel v. Denver & Rio Grande W. R.R. Co., 346 F.3d 987, 991 (10th Cir. 2003). The reliability examination "cannot be permitted to evolve into an assessment of the ultimate persuasiveness of the proffered expert testimony." Williams, 496 F.Supp.2d at 1233. Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, at 596. Accordingly, a court's "focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Bitler v. AO Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2005).

<h3 style="text-align:center">III. Discussion</h3>

  a. Janine Smedley

Plaintiff alleges that Smedley's testimony is unreliable. In support of this, she largely relies on deposition testimony in which Plaintiff claims Smedley did not adequately define the term "injury." (Pl.'s Mot., Dkt. No. 139, p. 5.) In general, Smedley seeks to testify that, based on her biomechanical review of the vehicles and other evidence, Plaintiff

experienced less compressive loading in the wreck than she does in her daily activities. (See Dkt. No. 139-1, p. 39.) Smedley additionally concludes that, based on her review, Plaintiff probably did not sustain a head, brain, or spine injury as a result of the wreck. (Id.) Plaintiff takes issue with these conclusions because, in her view, Smedley struggled to define an "injury" in her deposition. Plaintiff further reasons that if Smedley struggles to define an injury, her conclusions are ultimately based on unreliable methodologies. (Pl.'s Mot., Dkt. No. 139, p. 5.)

Plaintiff also challenges Smedley's reliance on the Abbreviated Injury Scale ("AIS"). (Id.) In this portion of her testimony, Smedley introduces the AIS (which scores injuries from 0 (no injury) to 6 (maximal injury—possibly fatal)) and analyzes accident field data collected by the National Automotive Sampling System Crashworthiness Data System (NASS-CDS). (See Dkt. No. 139-1, p. 33-34.) Here, Smedley analyzed the data of accidents similar to Plaintiff's—crashes of similar impact where the occupant was restrained by a seatbelt—and ultimately concluded that "[t]he forces acting on Ms. Annese during the subject incident would be expected to produce, at most, transient strain (AIS = 1)." (Id.) Plaintiff takes issue with Smedley's use of the AIS because "while she attempts to use the AIS as some form of an injury definition, their own analysis as explained by Ms. Smedley doesn't allow the terms that indicate whether an injury is probable, possible and/or ruled out." (Pl.'s Reply, Dkt. No. 153, p. 2.)

The Court finds that Smedley's testimony is reliable. First, the Court finds that Plaintiff's own definition of an injury is not deficient—she admitted it was a broad question, but did not offer confusing testimony. (See Dkt. No. 146-2, p. 6.) Moreover, she

4

offered an adequate definition of "injury" in her affidavit. (Dkt. No. 146-3, p. 1-2.) Nevertheless, the Court finds that a jury can generally determine the definition of an injury for itself. Thus, Plaintiff's purported lack of a definition is unlikely to confuse the jury.

Moreover, the Court finds that Plaintiff's concerns about Smedley's reliance on the AIS are unfounded. Smedley does not seek to use this scale to measure Plaintiff's injury— she only uses it, along with information collected by NASS, to opine on the expected AIS score produced by Plaintiff's wreck. (See Dkt. No. 139-1, p. 33-34.) None of this is based on unreliable methodologies, nor are any methodologies applied in an unreliable way. Plaintiff is free to challenge Smedley's methodologies in cross-examination. The Court, however, finds that none of these arguments is sufficient to preclude Smedley's expert testimony.

  b. Dr. Stephen Conner

Plaintiff challenges both the qualifications and the reliability of Dr. Conner's testimony. The core of Plaintiff's challenge is that Dr. Conner has not performed any spinal surgeries over the past 15-20 years, yet his proffered testimony criticizes the surgical strategies and decisions of Plaintiff's doctor. (Pl's Mot., Dkt. No. 140, p. 3.) Plaintiff contends that over the last 15-20 years, there have been a number of advancements within the field of spinal surgery—so much so that it has become a sub-specialty within the medical field. (Id.) Thus, Plaintiff concludes, Dr. Conner is no longer qualified to testify regarding spinal surgeries, and, even so, any testimony is unreliable. (Id. at 3-5.)

Nevertheless, Xpress maintains that when he performed spinal surgeries, Dr. Conner did so regularly for 15-20 years. (Def. Xpress's Resp., Dkt. No. 147, p. 2.) Moreover, Xpress points out that Dr. Conner consults with clients regarding spinal surgery, stays current on new developments and technologies within the field, and still performs surgeries—just not spinal surgeries. (Id. at 2-3.) In essence, Xpress objects to the notion that Defendant is now unqualified to give reliable testimony regarding spinal surgery simply because he stopped performing them.

The Court concludes that Dr. Conner is qualified to give expert testimony regarding the medical and surgical decisions of Plaintiff's doctor. Dr. Conner performed surgery for at least 15 years, and, since then, has stayed up to date on developments in the field, as he has advised clients who have received spinal surgery. (Id. at 2-3.) Given his past and experience within the field, his time away from performing spinal surgery alone is insufficient to render him unqualified on the subject.

Nor does it render his testimony unreliable. Notably, Plaintiff does not challenge the methodology used by Dr. Conner in reaching his conclusions. The Court is satisfied that Dr. Conner's proffered testimony is based on sufficient facts/data, is based on reliable principles, and reliably applies those principles to the facts. Again, Plaintiff is free to revive these arguments to challenge the ultimate weight of Dr. Conner's testimony, but the Court finds that Dr. Conner will be permitted to testify as an expert.

CONCLUSION

For the reasons stated above, Plaintiff's (1) Motion to Exclude the Testimony of Janine Smedley (Dkt. No. 139) and (2) Motion to Limit the Testimony and Opinions of Dr. Stephen B. Conner (Dkt. No. 140) are both DENIED.

IT IS SO ORDERED this 18th day of March, 2019.

ROBIN J. CAUTHRON
United States District Judge